**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **INVENTERGY LBS, LLC** | |
| **Plaintiff,** | Case No.: 1:19-cv-23341 |
| **v.** | **Patent Case** |
| **MOTOMON, CORP.,** | **Jury Trial Demanded** |
| **Defendant.** | |

**DEFENDANT MOTOMON, CORP.'S RULE 12(b)(6) MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM AND MEMORANDUM OF LAW IN SUPPORT**

Dated: September 30, 2019

/s/ *Eleanor T. Barnett*
Eleanor T. Barnett, Esq.
Fla. Bar. No. 0355630
WALDMAN BARNETT, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Tel: 305-371-8809
ebarnett@waldmanbarnett.com
litservice@waldmanbarnett.com

*Counsel for Defendant*
*Motomon, Corp.*

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF ARGUMENT .................................................................................. 1

III. STATEMENT OF THE FACTS .................................................................................. 2

IV.  LEGAL STANDARD ............................................................................................... 5

    A.   Rule 12(b)(6) ................................................................................................. 5

    B.   35 U.S.C. § 101 ............................................................................................. 6

    C.   Indirect Infringement ................................................................................... 6

V.   ARGUMENT .......................................................................................................... 7

    A.   The Asserted Patents Are Invalid Under 35 U.S.C. § 101 ......................... 7

        1.   Claim 1 of the '978 Patent is not patent eligible ............................... 7

            (a)   *Alice* Step 1: Claim 1 of the '978 Patent is directed to an abstract idea ................................................................................. 8

            (b)   *Alice* Step 2: Claim 1 contains no inventive concept ..................... 12

        2.   The remaining claims are also abstract and contain no "inventive concept" ......................................................................................... 13

        3.   There are no claim construction or factual disputes preventing the Court from ruling at the Rule 12 stage ............................................. 16

    B.   The Indirect Infringement Claims Should Be Dismissed ...................... 18

VI.  CONCLUSION ...................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
 882 F.3d 1121 (Fed. Cir. 2018)............................................................................5

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
 838 F.3d 1253 (Fed. Cir. 2016)......................................................................6, 9, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
 573 U.S. 208, 226–27 (2014) ....................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.*,
 842 F.3d 1229 (Fed. Cir. 2016)............................................................................9

*Artrip v. Ball Corp.*,
 735 F. App'x 708 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 1177 (2019) ..............................18

*Automated Tracking Sols., LLC v. Coca-Cola Co..*,
 723 F. App'x 989 (Fed. Cir. 2018) ......................................................................10

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018)......................................................................16, 17

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
 681 F.3d 1323 (Fed. Cir. 2012)......................................................................6, 7

*BSG Tech LLC v. Buyseasons, Inc.*,
 899 F.3d 1281 (Fed. Cir. 2018)...........................................................................16

*buySAFE, Inc. v. Google, Inc.*,
 765 F.3d 1350 (Fed. Cir. 2014).....................................................................11, 13

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 927 F.3d 1306 (Fed. Cir. 2019).....................................................................5, 17

*Commil USA, LLC v. Cisco Sys., Inc.*,
 135 S. Ct. 1920 (2015)...................................................................................18

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014)......................................................................7, 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016).....................................................................11, 13

*Epic IP LLC v. Backblaze, Inc.*,
2018 WL 6201582 (D. Del. Nov. 26, 2018) ....................................................................8

*Finjan, Inc. v. Blue Coat System, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ...............................................................................8, 14

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) .....................................................................................5

*Intellectual Ventures I LLC v. Capital One Financial Corporation*,
850 F.3d 1332 (Fed. Cir. 2017) .............................................................................10, 15

*Kennedy v. Am. Airlines Inc.*,
760 F. App'x 136 (3d Cir. 2019) ...................................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .......................................................................................................14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) .................................................................................6, 8

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ..................7

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ........................................................................8, 10, 11

*In re TLI Commc'ns LLC Patent Litigation*,
<SoftRt823 F.3d 607, 613–14 (Fed. Cir. 2016) ..........................................................13

*In re TLI Commc'ns LLC Patent Litigation*,
823 F.3d at 613 ............................................................................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..................................................5

**Statutes**

35 U.S.C. § 101....................................................................................................................5, 7

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................................2, 5, 7

Rule 12 ....................................................................................................................................16

## I.     NATURE AND STAGE OF PROCEEDINGS

Inventergy LBS, LLC filed this lawsuit on August 9, 2019, accusing Motomon, Corp. of infringing U.S. Patent. Nos. 8,760,286, 10,129,695, 9,219,978, and 9,781,558. In particular, Inventergy alleges that Motomon's AutoGPS infringes "at least exemplary claim 1" of each of the Asserted Patents. D.I. 1 ("Complaint"), ¶¶ 17, 27, 37, 47. For at least the reasons that follow, Inventergy's case should be dismissed at the pleading stage because the Asserted Patents are invalid for failure to claim patent-eligible subject matter.

## II.    SUMMARY OF ARGUMENT

The Asserted Patents are directed to the abstract idea of enhanced communication with a tracking device. Despite the Asserted Patents' lofty goals, however, nothing in the claims or the specification of the Asserted Patents explains how the claimed enhanced communication is accomplished in concrete, technical terms. Ultimately, the Asserted Patents **claim no specific solutions** to the technical problems identified in the prior art systems, but instead **merely claim the desired result** of enhanced communication. The Supreme Court held in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l* that results-oriented patent claims directed to abstract ideas are invalid as a matter of law under 35 U.S.C. § 101, and courts have applied that holding in dozens of cases since *Alice* issued. 573 U.S. 208, 226-27 (2014).

Separately, Inventergy's indirect infringement claims fail because Inventergy makes no allegations demonstrating that Motomon knew of the Asserted Patents or of the alleged infringement. Nor did Inventergy allege that Motomon's allegedly infringing products do not have any substantial non-infringing use. Thus, Inventergy's factual allegations, even when presumed true, do not support a plausible claim.

Resolving these issues does not require additional discovery or claim construction. Inventergy's factual allegations, even when presumed true, do not avoid dismissal. Therefore,

Motomon requests the Court to grant its motion to dismiss Inventergy's claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.    STATEMENT OF THE FACTS

All four Asserted Patents share the same specification and figures, are continuations of the same application that resulted in U.S. Patent No. 8,154,401, are entitled "System and Method for Communication with a Tracking Device," and are directed to the same abstract idea of enhanced communication with a tracking device. *See* '978 Patent at 1:22-23.[1] The Asserted Patents acknowledge that tracking devices capable of communicating data to a central tracking station were well known in the art the time of the Asserted Patents' priority date. *Id.* at 1:25-29. The Asserted Patents contend, however, that the communication capabilities of existing devices were "limited to the transmission of a device identifier in combination with location data and, in some cases, a distress signal." *Id.* at 1:34-36. According to the Asserted Patents, these limitations were due to existing "devices['] power storage capacity" and the "cost of network access (e.g., mobile phone air time)." *Id.* at 1:37-44. Consequently, the Asserted Patents purported to solve these issues by providing a system and method for "enhanced communication with tracking devices" that also "minimize[ed] power consumption." *Id.* at 1:45-51. The advantages of the alleged invention, the Asserted Patents state, "include the efficient use of network access time," "the conservation of tracking device power," "enhanced efficiency and flexibility in the communication," and "***functional access*** . . . to the tracking device." *Id.* at 1:58-65 (emphasis added).

The claimed "functional access" to the tracking device appears to be the locus of the purportedly inventive concept. According to the Asserted Patents, "functional access" to a tracking

---

[1] Because the Asserted Patents share the same specification, all citations to the Asserted Patents' shared specification will be made with reference to the '978 Patent.

device ***is the result*** of a "processor [executing] code to impart functionality to the tracking device." *Id*. at 2:10-16. The Asserted Patents go on to explain that the "functionality of the tracking device depends at least in part on the configuration data [where the] configuration routine is operative to modify the configuration data responsive to a communication from the remote system." *Id*. As a result, "functional access to the tracking device is provided to the remote system." *Id*. Figure 5 of the Asserted Patents depicts the claimed concept of manipulating a tracking device's configuration data, where the transmission step is highlighted in red:



*Id.* at Fig. 5. Thus, the claimed enhanced communication method consists of: (1) establishing the communication via wireless network; (2) transmitting configuration data to the tracking device; (3) receiving processed data from the tracking device; (4) analyzing the configuration data to determine whether reconfiguration is necessary; and (5) altering the configuration data so as to achieve the claimed "enhanced communication" results. *Id.* 42:1-23.

Notably, the Asserted Patents require no special hardware, relying solely on conventional components such as "a tracking device includes a location detector, a communication device, memory, a processor, and a configuration routine," where the claimed configuration routine is the step said to impart "functional access" to the tracking device. *Id.* at 2:1-3. Claim 1 of the '978 Patent is representative of the claims:

1. A tracking device comprising:

a location detector operative to determine locations of said tracking device;

a communication device operative to communicate with a remote system;

memory for storing data and code, said data including location data determined by said location detector and configuration data;

a processor operative to execute said code to impart functionality to said tracking device, said functionality of said tracking device depending at least in part on said configuration data;

a configuration routine operative to modify said configuration data responsive to a communication from said remote system;

a buffering routine operative to buffer location data indicative of a plurality of said locations when said communication device is unable to communicate with said remote system;

a reporting routine operative to transmit said location data indicative of said plurality of said locations when said communication device is able to communicate with said remote system.

*Id.* at cl. 1.

As is apparent on its face, Claim 1 is directed exclusively to the desired ***result*** of enhanced communication with the tracking device, but does not recite ***how*** the enhanced communication capability is achieved or ***how*** the claimed configuration routine results in "functional access." Nor does the specification explain ***how*** the enhanced communication allegedly resulting from the "functional access" to the tracking device actually decreases power consumption or improves network efficiency. As just one example among many, rather than disclosing a method that reduces

a tracking device's power consumption, the Asserted Patents merely describe a method to **communicate** the battery status via the transmission of configuration data. *Id.* at 2:54-58.

In addition to its direct infringement allegations, Inventergy lodges allegations of indirect infringement in the form of induced and contributory infringement claims for all four Asserted Patents. Complaint, ¶¶ 21-22, 31-32, 41-42, 51-52. Inventergy's Complaint, however, is devoid of any factual basis for these allegations, and does nothing than state the legal conclusion that induced and contributory infringement has occurred.

## IV.   LEGAL STANDARD

### A.   Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Kennedy v. Am. Airlines Inc.,* 760 F. App'x 136, 139 (3d Cir. 2019) (internal citations omitted). The § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). "[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion [and] even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018). However, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1097 (Fed Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019) (vacating Rule 12(b)(6) and Rule 12(c) dismissals where complaint made plausible and "well-pleaded allegations" of eligibility).

### B.     35 U.S.C. § 101

Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). Hence, the § 101 analysis for abstract ideas requires courts to determine "whether the claims [at issue] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). "The abstract idea exception prevents patenting a result where it matters not by what process or machinery the result is accomplished." *Id.* at 1312 (internal quotation omitted). Accordingly, "[c]laims that are so result-focused, so functional, as to effectively cover any solution to an identified problem are frequently held ineligible under section 101." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016) (internal quotation omitted).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 217. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal quotation omitted).

### C.     Indirect Infringement

To establish induced infringement, the plaintiff must plausibly plead that the defendant "specifically intended their customers to infringe [the asserted patent] and knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys.*

*Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Id.* at 1337 (quoting 35 U.S.C. § 271(c)).

## V.   ARGUMENT

### A.   The Asserted Patents Are Invalid Under 35 U.S.C. § 101

The claims of the Asserted Patents are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each claim of the Asserted Patents is directed to the abstract idea of enhanced communication with a tracking device. Yet, none of the claims contain an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 217-18. Because Inventergy has failed to state a claim upon which relief may be granted, Motomon respectfully requests that the Court grant its motion and dismiss Inventergy's infringement claims with prejudice. FED. R. CIV. P. 12(b)(6).

### 1.   Claim 1 of the '978 Patent is not patent eligible

In determining patent eligibility under § 101, the Court must first determine whether the representative claims are directed to an abstract idea.[2] *Alice*, 573 U.S. at 218. Under any plausible reading, the claims of the patent are directed to an unpatentable abstract idea because they claim

---

[2] For § 101 purposes, all claims of the Asserted Patents can be evaluated from the perspective of representative Claim 1 of the '978 Patent because they are all "substantially similar and linked to the same abstract idea." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.").

nothing more than the "longstanding," "routine," and "conventional" concept of enhanced communication with a tracking device. *See id.* at 218-25; *Bilski*, 561 U.S. at 611.

### (a)   *Alice* Step 1: Claim 1 of the '978 Patent is directed to an abstract idea

The abstract idea inquiry begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). Specifically, this Court should determine "whether the claims . . . focus on a specific means or method that improves the technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc.*, 837 F.3d at 1314.

Here, the focus of Claim 1 is not directed to any specific means or method for improving technology, but rather the abstract idea of enhancing communication with a tracking device. '978 Patent at 1:45-51. While the '978 Patent identifies "power consumption," "power storage capacity," and "cost of network access" as the problems limiting communication between the central station and the tracking device, the "claimed advance" of Claim 1 is enhanced communication capabilities via an undisclosed method of transmitting and manipulating configuration data between the remote system and the tracking device. *Id.* at 1:37-44. But the goal of enhanced communication absent specific means for achieving it is a concept, not an invention, and thus ineligible for patent protection. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 2018 WL 6201582, at *5 (D. Del. Nov. 26, 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a disembodied concept. The asserted claims of the '599 patent recite the concept, but not the way to implement it.").

Rather than describing how the purported enhanced communication capabilities are achieved, the claimed tracking system consists of a handful of generic electronic components: a location detector, a communication device, a storing device, a processor, a configuration routine, a buffering routine, and a reporting routine. '978 Patent at Abstract; cl. 1. Claim 1 of the '978 Patent then recites these generic components by simply claiming what they are "operative" to do:

> 1. A tracking device comprising:
>
> a location detector *operative to* determine locations of said tracking device;
>
> a communication device *operative to* communicate with a remote system;
>
> memory for storing data and code, said data including location data determined by said location detector and configuration data;
>
> a processor *operative to* execute said code to impart functionality to said tracking device, said functionality of said tracking device depending at least in part on said configuration data;
>
> a configuration routine *operative to* modify said configuration data responsive to a communication from said remote system;
>
> a buffering routine *operative to* buffer location data indicative of a plurality of said locations when said communication device is unable to communicate with said remote system;
>
> a reporting routine *operative to* transmit said location data indicative of said plurality of said locations when said communication device is able to communicate with said remote system.

'978 Patent at cl. 1 (emphasis added).

Importantly, Claim 1 of the '978 Patent does not recite any specific way of communicating other than collecting, storing, transmitting, analyzing data, and imparting some form of undisclosed functionality based on the analysis of the data. Nor does it specify any particular configuration or arrangement of the components. Instead, Claim 1 is directed to the abstract idea of communicating itself. *See Affinity Labs of Texas, LLC*, 838 F.3d at 1258 ("There is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself.") (emphasis in original); *Apple, Inc. v. Ameranth, Inc.*,

842 F.3d 1229, 1241 (Fed. Cir. 2016) (affirming that the claims were patent-ineligible where "[t]hey do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."); *see also SAP Am., Inc.*, 898 F.3d at 1167 ("[C]laims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea.") (internal quotations omitted).

The Federal Circuit held a similar system for locating and tracking objects to be directed to an abstract idea where the claims merely recited routine functions such as "collecting data from sensors, analyzing that data, and determining results based on the analysis of data." *Automated Tracking Sols., LLC v. Coca-Cola Co.*., 723 F. App'x 989, 993 (Fed. Cir. 2018). The Federal Circuit has also held function-heavy claims to be ineligible by the Federal Circuit. *See, generally, Intellectual Ventures I LLC v. Capital One Financial Corporation*, 850 F.3d 1332 (Fed. Cir. 2017). In *Intellectual Ventures I*, the asserted claims covered an apparatus comprising a processor and multiple components that performed certain functions. *Id.* at 1339. But the Federal Circuit agreed that the claimed components did not confer eligibility because the claims did nothing more than recite the functions of those components. *Id.* at 1341 ("Rather, the claims recite both a generic computer element—a processor—and a series of generic computer "components" that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying. That is to say, they merely describe the functions of the abstract idea itself, without particularity."); *see also Capital One Financial Corp. See Capital One Financial Corp.*, 850 F.3d at 1341.

Claim 1 of the '978 Patent is thus different from what the Federal Circuit has determined to be patent eligible. For example, in *Ancora Techs v. HTC*, the claims were determined to be

eligible because they were directed to "a non-abstract computer-functionality improvement [] done by a specific technique that departs from earlier approaches to solve a specific computer problem") 908 F.3d 1343, 1348 (Fed. Cir. 2018), as amended (Nov. 20, 2018). Similarly, in *Thales Visionix Inc. v. United States*, the claimed advance was directed to a method that used "inertial sensors in a non-conventional manner to reduce errors" when measuring the location of moving objects, an improved technique in a physical tracking system. 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). And in *Enfish, LLC v. Microsoft Corp.*, the Federal Circuit found the claims patent eligible because the focus "is on the specific asserted improvement in computer capabilities," rather than "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). In contrast, the focus of Claim 1 of the '978 Patent is storing and transmitting location and configuration data between the tracking device and the remote system— "an improvement in wholly abstract ideas," rather than an improvement "in the way computers and networks carry out their basic functions." *SAP Am. Inc.*, 898 F.3d at 1168.

That Claim 1 is limited to communicating with a tracking device does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). As the Supreme Court explained in *Alice*, "the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Alice,* 573 U.S. at 222-23 (internal quotation omitted); *see buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (narrowing the claims to cover only online transactions was "an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context")

(internal quotations and citations omitted). Thus, Claim 1 is directed to an abstract idea of communicating even if its limitations require practicing that idea in the technological environment of a tracking device. This concept is an abstract idea, not an invention. Accordingly, Claim 1 fails the first step of the *Alice* test.

      **(b)**    *Alice* **Step 2: Claim 1 contains no inventive concept**

The second step of the § 101 analysis requires courts to determine whether the claims at issue contain an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012)). "[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Id.* at 225. Claim 1 of the '978 Patent fails this inquiry because it merely applies the concept in a generic technological environment using conventional computer components and functions.

The Asserted Patents' shared specification is generic and devoid of any improvement or non-conventional use of known generic components. For example, the Asserted Patents concede that systems for tracking and communicating with tracking devices already existed in the prior art. '978 Patent at 1:25-36. The Asserted Patents' claimed advance thus focused on a configurative routine, which purportedly communicates with and reconfigures the location detector "via a wireless network and providing configuration data to the tracking device via the wireless network," generates the processed data, and "provid[es] new configuration data to the tracking device via the wireless network." '978 Patent at 3:14-23, Fig. 5. However, the Asserted Patents merely combined generic components (a memory and a processor) with generic hardware (a location detector, a communication device and a configuration routine) to achieve the desired result of enhanced

communication. *See* '978 Patent at 2:1-3 (disclosing "a location detector, a communication device, memory, a processor and a configuration routine."). Those computer components only perform the generic functions of determining locations, transmitting data, storing data and code, executing code, and determining the result based on the data. *Id.* at 2:3-16.

Nowhere in the Asserted Patents' recited communication mechanism is there any limitation that could be considered an inventive concept under step two of the *Alice* test. *See Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and display technology for gathering, sending, and presenting the desired information."). It is well established that "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. For example, in *In re TLI Commc'ns LLC Patent Litigation*, even though the claims at issue recited "concrete, tangible components," such as "a telephone unit" and "a server," the Federal Circuit found the claims patent ineligible because the specification described those components "as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art." 823 F.3d 607, 613-14 (Fed. Cir. 2016). There is simply nothing inventive in these "well-understood, routine, activit[ies]." *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d at 613; *see also buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Accordingly, Claim 1 fails the second step of the *Alice* test.

### 2.     The remaining claims are also abstract and contain no "inventive concept"

The remaining claims of the Asserted Patents recite the same abstract idea of communicating with a tracking device.  For example:

- Claims 14 and 22 of the '978 Patent recite a method of communicating, including providing and receiving data "via a wireless network."

- Claim 21 of the '978 Patent is a *system* analogue to Claim 1 of the '978 Patent that requires the same location detector, communication device, memory, processor, and adds "means," instead of "routines," to modify, buffer and report data.

- Claims 1 and 4 of the '695 Patent; 1, 34, 35 and 36 of the '286 Patent; 1 and 21 of the '978 Patent; and 1, 17, 31 of the '558 Patent are directed to a *device*.

- Claims 7 and 10 of the '695 Patent; 23 of the '286 Patent; 14 and 22 of the '978 Patent; and 10, 25, 38, 48 of the '558 Patent are directed to a *method*.

None of these claims confer patent eligibility because they are not directed to any specific improvement to computer functionality, but rather the generic receiving and transmitting data via existing networks. *See Affinity Labs of Texas, LLC*, 838 F.3d at 1261 (finding "the conveyance and manipulation of information using wireless communication" patent-ineligible when the involved "components were conventional and were used in conventional ways.").

The dependent claims fare no better. They add additional limitations regarding the abstract idea, but do not include the specificity necessary to claim patent-eligible subject matter. Nor do they include anything other than generic components and processes. Instead, they recite either token pre- or post-solution limitations or purely conventional functions performed by generic computer components. *See Mayo*, 566 U.S. at 79 ("Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law.") (internal citations omitted); *Bilski*, 561 U.S. at 610-11 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.") (internal quotations omitted).

For example, the dependent claims of the '978 Patent can be generally divided into two groups: (1) claims that describe various functionalities of the configuration data; and (2) claims

that describe the types of data that can be communicated. Claims 2-8, 15-16, 20 and 23 fall into the first grouping. As representative examples of this first grouping, Claim 2 recites that configuration data can "at least partially determine[] an interval for communicating said location data to said remote system," while Claim 7 recites that configuration data can "at least partially determine[] a power state of the said location detector." '978 Patent, cls. 2, 7. Claims 9-13 and 17-19 fall into the second grouping. As representative examples of the second grouping, Claim 12 covers "data indicative of a status of said location detector," while Claim 17 covers "data indicative of a battery status of said tracking device," *id.* at cls. 12, 17. The remaining dependent claims of the other Asserted Patents can be summarized as shown in the table below:

| Patent | Claims | Directed to |
|--------|--------|-------------|
| '695 | 5, 11, 21-22, 27, 31-32 | Configuration data formatting functionality of the location detector |
| '286 | 8-12 | |
| '558 | 6-8 | |
| '695 | 2-3, 6, 8-9, 12, 14-15, 17, 20, 24-25, 27, 30 | Configuration data formatting functionality of the buffering routine |
| '286 | 3-5, 25 | |
| '695 | 6, 8, 13, 16, 18-19, 23, 26 | Configuration data formatting functionality of the reporting routine |
| '286 | 2, 6-7, 13-14, 22, 24, 26-29, 33 | |
| '558 | 2-5, 9, 11, 15, 18, 24, 29-30, 32, 37, 41-42, 44, 47, 51 | |
| '286 | 15-21 | Communication device functionality |
| '695 | 18-19, 28-29 | Data indicating status of the tracking device |
| '286 | 30-32 | |
| '558 | 12-14, 16, 19-23, 26-28, 33-36, 39-40, 45-46, 49-50 | |

None of these limitations transforms the abstract idea of communicating with a tracking device into a patentable subject matter because, like the independent claims from which they depend, they are purely result-oriented and fail to specify how the configuration data is communicated in the first place. *See Capital One Financial Corp.*, 850 F.3d at 1342 ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more.") (citing *Elec. Power Grp.*, 830 F.3d at 1356). Nor do

the dependent claims add any inventive concept because "[t]he concept of data collection, recognition, and storage is undisputedly well-known." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Moreover, the dependent claims fail to recite any unconventional components or techniques that amount to "significantly more" than the abstract idea. Rather, they simply apply the abstract idea of communicating with a tracking device to indicate generic information such as power status, location and time or distance intervals. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Thus, the dependent claims of Asserted Patents, like the independent claims, fail both steps of the *Alice* test and are invalid under §101.

### 3. There are no claim construction or factual disputes preventing the Court from ruling at the Rule 12 stage

The issue of the patent eligibility of the Asserted Patents is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis, as Inventergy has not proposed any constructions of the Asserted Patents' terms that would alter the ineligibility of the claims. Nor could it. Additionally, there are no factual disputes on this record. The Asserted Patents do not assert any unconventional mechanism of implementing the claimed idea. It claims the desired result of enhanced communication capabilities, but goes no further.

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. *Id.* To the extent that the claims captured those inventive features, the

Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional way. Although the specification of the Asserted Patents notes some limiting factors for existing systems, such as "the devices power storage capacity" and "the cost of network access," '978 Patent at 1:39-44, neither the specification nor the claims include any limitations that incorporate solutions to those concerns such as less power consumption or non-conventional networks. *See Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use or adding token postsolution components d[oes] not make the concept patentable.").

This case is also unlike the recent Federal Circuit case, *Cellspin*¸ where the court held that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to create a factual dispute, and that "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). In contrast, Inventergy fails to make any factual allegations that the specification or claims of the Asserted Patents disclose technology improvement or inventiveness. *See id.* (acknowledging that "any allegation about inventiveness, wholly divorced from the claims or the specification, [does not] defeat[] a motion to dismiss").

Accordingly, this issue is ripe for the Court's consideration, and the Asserted Patents are invalid for failing to claim patent-eligible subject matter.

**B.**      **The Indirect Infringement Claims Should Be Dismissed**

Inventergy's induced and contributory infringement claims should be dismissed because Inventergy fails to plead any knowledge of the alleged infringement and a lack of substantial non-infringing use. "[L]iability for inducing infringement attaches *only* if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (internal quotations omitted) (emphasis added). To establish contributory infringement, a plaintiff "must plausibly allege that the accused infringer *knew of the asserted patents*" and "plead facts that allow an inference that the components sold or offered for sale have *no substantial non-infringing uses*." *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 1177 (2019) (emphasis added).

Inventergy's induced and contributory infringement claims must fail because Inventergy des not even attempt to allege that Motomon knew of the Asserted Patents before providing its purportedly infringing products to customers, or that Motomon knew the customers' acts would infringe the Asserted Patents. Complaint, ¶¶ 21-22, 31-32, 41-42, 51-52. Nor does Inventergy allege that Motomon's allegedly infringing products have no substantial non-infringing uses. *Id.* at ¶¶ 22, 32, 42, 52. In effect, Inventergy made legal conclusions, rather than factual allegations in its Complaint. *Id.* at ¶¶ 21-22, 31-32, 41-42, 51-52. Yet, even when taking all of Inventergy's allegations as true, nothing in its Complaint gives rise to a reasonable inference that Motomon knew of the Asserted Patents prior to offering its products or knew that its customers' acts constituted the alleged infringement, or that the allegedly infringing products have no substantial non-infringing uses.

Accordingly, the Court should dismiss Inventergy's induced infringement and contributory infringement claims.

## VI.    CONCLUSION

For the foregoing reasons, Motomon respectfully requests that the Court dismiss Inventergy's patent infringement claims based on the Asserted Patents for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Motomon requests dismissal with prejudice.

Dated: September 30, 2019

Respectfully submitted,

by: */s/ Eleanor T. Barnett*
Eleanor T. Barnett, Esq.
Fla. Bar No. 0355630
WALDMAN BARNETT, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
(305) 371-8809 (Telephone)
ebarnett@waldmanbarnett.com
litservice@waldmanbarnett.com

*Counsel for Defendant Motomon, Corp.*

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on September 30, 2019 with a copy of this document via the Court's CM/ECF system.

/s/ *Eleanor T. Barnett*
Eleanor T. Barnett, Esq.